# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WERONIKA RECHUL, on behalf of herself and others similarly situated, | CIVIL ACTION FILE NO. |
| Plaintiff, | |
| v. | **COMPLAINT – CLASS ACTION** |
| CRISP MARKETING, LLC | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Weronika Rechul (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

## NATURE OF ACTION

1. "If robocalls were a disease, they would be an epidemic." *Rage Against Robocalls*, Consumer Reports (July 28, 2015, 6:00 AM), ttps://www.consumerreports.org/cro/magazine/ 2015/07/rage-against-robocalls/index.htm. "Robocalls" are the #1 consumer complaint in America today.

2. Even as far back as 2012, the Pew Research Center reported 69 percent of cellular users who use text messaging receive unwanted text message spam, with 25 percent of them receiving it on a weekly basis. Jan Lauren Boyles and Lee Rainie, *Mobile Phone Problems*, Pew Research Center (Aug. 2, 2012), http://www.pewinternet.org/2012/08/02/mobile-phone-problems.

3. Robocalls, including text messages have only increased since the 2012 study. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC Chairman).

4. "The FTC receives more complaints about unwanted calls than all other complaints combined." Comment of the Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the TCPA of 1991, Notice of Proposed Rulemaking*, CG Docket No. 02-278, at p. 2; FCC 16-57 (June 6, 2016), *available at* https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf.

5. This case involves a campaign by Crisp Marketing, LLC ("Crisp Marketing") to market its services through the use of automated and pre-recorded telemarketing calls and automated text messages in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

6. By using an automated telephone dialing system to send thousands of automated telemarketing text messages without first obtaining the prior express written consent of recipients, Crisp Marketing violated the TCPA.

7. Regardless of the type of equipment used, the use of pre-recorded messages to call a cellular telephone is also a violation of the TCPA.

8. Moreover, Crisp Marketing sent messages to cellular telephone numbers that are registered on the National Do Not Call List (hereafter "NDNC"), which is a separate and

additional violation of the TCPA. The recipients of Crisp Marketing's illegal calls, which include Plaintiff and the proposed classes, are entitled to damages under the TCPA.

## PARTIES

9. Plaintiff Weronika Rechul is, and at all times mentioned herein was, an individual citizen of the Commonwealth of Massachusetts.

10. Defendant Crisp Marketing, LLC is a Florida limited liability company, with a principal place of business of 110 E Broward Blvd. Suite 1600, in Fort Lauderdale, FL 33301, and a registered agent of Justin Ferreira at the same address.

11. Crisp Marketing makes telemarketing calls and solicits sales into this District, as it did with the Plaintiff.

## JURISDICTION AND VENUE

12. The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA") codified as 28 U.S.C. 1332(d)(2). The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a national class, which will result in at least one Class member from a different state.

13. This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

14. This Court has personal specific jurisdiction over Crisp Marketing because the company sent and created the text messages and pre-recorded calls at issue.

15. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff Rechul is a resident of this District, which is where she received the illegal telemarketing calls that are the subject of this putative class action lawsuit. The services that were promoted on those telemarketing calls were also provided in this District.

## TCPA BACKGROUND

Calls Made Using a Pre-Recorded Message or "Automated Telephone Dialing System"

16. The TCPA regulates, among other things, the use of a pre-recorded message or an automated telephone dialing system ("ATDS") to make calls or send text messages. *See* 47 U.S.C. § 227, *et seq.*; *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17. Specifically, the TCPA prohibits the use of an automated telephone dialing system to make any telemarketing call or send any telemarketing text message to a wireless number in the absence of an emergency or the prior express written consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1831 (F.C.C. 2012).

18. The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1)(A)-(B). The first component of this definition is satisfied when a dialing system has the capacity to call "a given set of numbers" or when "dialing equipment is paired with . . . a database of numbers." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC

Rcd. 14,014, ¶ 133 (2003); *see In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (F.C.C. 2008) (rejecting argument that a dialing system "meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists" and reasoning that "the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective"); *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1051 (9th Cir. 2018) (holding that "equipment that made automatic calls from lists of recipients was . . . covered by the TCPA").

19.  "[T]elemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."  47 C.F.R. § 64.1200(f)(12).

20.  "[P]rior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."  47 C.F.R. § 64.1200(f)(8).

The National Do Not Call Registry

21.  Second, § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

22.  In this rulemaking proceeding, the FCC was instructed to "compare and evaluate

alternative methods and procedures (including the use of … company-specific 'do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

23. Pursuant to this statutory mandate, the FCC issued two regulations, only one of which is relevant here.

24. The relevant regulation under § 227(c) established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

25. The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

26. However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

27. These procedures are codified at 47 CFR 64.1200(d)(1)-(7).

28. Specifically, § 64.1200(d) requires a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d)(1, 2, 3, 6).

29. These policies and procedures prohibit a company from making telemarketing

calls unless they have implemented these policies and procedures. 47 CFR 64.1200(d).

30.     Accordingly, all telemarketing calls violate the TCPA unless Defendant can demonstrate that it has implemented the required policies and procedures.

31.     Consent is irrelevant to § 64.1200(d).

32.     A violation of § 227(c) through 47 C.F.R. § 64.1200(d) carries statutory damages of $500 to $1,500 per call.

33.     Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR § 64.1200(e).

34.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

35.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

36.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**FACTUAL ALLEGATIONS**

37.     Defendant Crisp Marketing is a "person" as the term is defined by 47 U.S.C. § 153(39).

38. At no point has Plaintiff Rechul sought out or solicited information regarding Defendant Crisp Marketing's services.

39. Plaintiff Rechul's telephone number, XXX-XXX-3174, is registered to a cellular telephone service.

40. From October to December, the Plaintiff Rechul received at least five generic computer generated text messages on her cellular telephone.

41. Below are images of some of the text messages:

> Fri, Nov 15, 10:05 AM
>
> Medicare Insurance Alert: Are your Medicare rates changing in 2020? Call 844-977-0156 to find out! (txt STOP to cancel)

> Wed, Nov 27, 9:59 AM
>
> Medicare Alert: Open enrollment ends soon! Are your Medicare rates changing in 2020? Call 844-979-0543 to find out before it's too late! (txt STOP to cancel)

> Fri, Dec 6, 3:20 PM
>
> MEDICARE OPEN ENROLLMENT ALERT: You have a FREE insurance review available. Call 844-980-0712 to redeem before open enrollment ends (txt STOP to cancel)

42. The text message received by Plaintiff (cited in the paragraph above) demonstrates that the message was sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as it seeks to have her sign up for Crisp Marketing's insurance services. This message therefore qualified as telemarketing. 47 C.F.R. § 64.1200(f)(12).

43. The SMS "short code" of 803-82 was used to send each of the texts.

44. A text message containing an SMS short code is characteristic of a message sent using an ATDS that dials a large volume of telephone numbers.

45. The fact that a SMS code was used to send the text message is evident that it was sent using an ATDS, as SMS codes are reserved for automatically made text messages.

46. As a result, the system that sent text messages to Plaintiff Rechul qualifies as an ATDS pursuant to 47 U.S.C. 227(a)(1)(A).

47. This is further supported by the non-personalized generic nature of the text message advertisements.

48. The dialing system used can also produce numbers using a sequential number generator and dial the numbers automatically.

49. The dialing system can do this by inputting a straightforward computer command.

50. Following a command, the dialing system will sequentially dial numbers.

51. In that scenario, the dialing system could dial a number such as (555) 000-0001, then (555) 000-0002, and so on.

52. This would be done without any human intervention or further effort.

53.     The Plaintiff also received multiple pre-recorded message calls from the Defendant on her same cellular telephone.

54.     This occurred at least on November 26, 2019, December 2, 2019 and December 7, 2019.

55.     The pre-recorded message was generally the same, advising the recipient, who was not identified in the recording, that there were savings available to them if they responded to the Defendant's call and completed a survey regarding their insurance.

56.     There was no option to opt-out from the calling.

57.     Moreover, since 2008, the Plaintiff Rechul's cellular telephone number has been listed on the NDNC list.

58.     Plaintiff Rechul's number is used exclusively for residential, non-commerical purposes.

59.     Plaintiff Rechul's cellular telephone number was on the National Do Not Call Registry for more than 31 days prior to the receipt of the first call advertising Crisp Marketing's goods or services.

60.     The calls were not necessitated by an emergency.

61.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls. Plaintiff and the Class Members were also harmed by use of their cell phone battery and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

62.     Defendant also did not maintain the policies and procedures required for

maintaining a do-not-call list, as required by the regulation 47 C.F.R. § 64.1200(d), prescribed under 47 U.S.C. § 227(c).

63. Specifically, Defendant did not maintain a written do-not-call policy.

64. Defendant further did not train its telemarketers on the existence and use of any do-not-call policy.

65. Defendant further did not document do-not-call requests when made, nor did it honor such requests.

66. Plaintiff received more than one telemarketing call from Defendant in violation of this regulation.

67. Plaintiff is not alone in her experiences with Defendant's calling practices.

68. Numerous online reviews indicate that this problem is widespread. Specifically:

- A July 25, 2019 Better Business Bureau ("BBB") complaint states: "Excessive telemarketing calls to my cell phone. Telemarketing calls for health insurance. I have insurance and I don't know why I am being called."

- A BBB review from January 2019 states: "This company has been calling me non stop for the past three months. I will receive at least three a day from them some days I received more than five from them with no way to get off. All the calls are for some type of medicare insurance that I am 30 years away from even being eligible to receive. It has been so bad that for the past three months my phone has been on do not disturb mode."

## CLASS ACTION ALLEGATIONS

69.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

70.     Plaintiff brings this action on behalf of herself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

71.     Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Robotexting Class:** All persons in the United States who, within four years prior to the commencement of this litigation until the class is certified, received one or more telemarketing texts on their cellular telephone from or on behalf of Crisp Marketing, sent via the same system(s) that sends texts from short code 5803-82.
>
> **Pre-Record Call Class:** All persons in the United States who, within four years prior to the commencement of this litigation until the class is certified, received one or more pre-recorded calls on their cellular telephone from or on behalf of Crisp Marketing.
>
> **Policy Class:** Plaintiff and all persons within the United States to whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing telephone calls in a 12-month period within four years prior to the commencement of this litigation until the class is certified.
>
> **National Do Not Call Registry Class**: All persons in the United States whose telephone numbers were on the National Do Not Call Registry, but who received more than one telephone solicitation telemarketing call or text message from or on behalf of Crisp Marketing with a 12-month period, from four years prior the filing of the Complaint.

72.     Plaintiff Rechul is a member of and will fairly and adequately represent and protect the interests of, these Classes as she has no interests that conflict with any of the class members.

73. Excluded from the Classes are counsel, the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

74. Plaintiff and all members of the Classes have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their cell phone battery, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

75. This Class Action Complaint seeks injunctive relief and money damages.

76. The Classes as defined above are identifiable through the Defendant's dialer records, other phone records, and phone number databases.

77. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds in each class.

78. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

79. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

80. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

81. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

> (a) whether Defendant utilized an automatic telephone dialing system to send its texts to the members of the Robotext Class;

(b) Whether agents operating on behalf of Defendant utilized an automatic telephone dialing system in sending text messages to members of the Robotext Class;

(c) Whether Defendant maintained a written "do not call" policy;

(d) Whether Defendant trained its employees or agents engaged in telemarketing on the existence and usage of any "do not call" policy;

(e) Whether Defendant recorded or honored "do not call" requests;

(f) whether Defendant systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

(g) whether Defendant made calls to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;

(h) whether Defendant's conduct constitutes a violation of the TCPA; and

(i) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

82. Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

83. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

84. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

85. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

86. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**FIRST CAUSE OF ACTION**
**Statutory Violations of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq.) on behalf of the Robotext Class**

87. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

88. Crisp Marketing violated the TCPA by sending, or causing to be sent via an agent, text messages to the cellular telephones of Plaintiff and members of the Robotext Class using an automated dialer without their prior express written consent.

89. As a result of the Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robotext Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

90. The Plaintiff and Robotext Class Members are entitled to an award of treble damages if there actions are found to have been knowing or willful.

91. Plaintiff and Robotext Class members are also entitled to and do seek injunctive relief prohibiting the Defendant from advertising their goods or services, except for emergency purposes, using an ATDS or pre-recorded voice in the future.

## SECOND CAUSE OF ACTION
**Knowing and/or Willful Violation of the Telephone Consumer Protection Act (47 U.S.C. 227, et seq.) on behalf of Prerecorded Call Class**

92.   Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

93.   Crisp Marketing violated the TCPA by sending, or causing to be sent via an agent, prerecorded messages to the cellular telephones of Plaintiff and members of the Prerecorded Call Class using an automated dialer without their prior express written consent.

94.   The Plaintiff and Prerecorded Call Class Members are entitled to an award of treble damages if there actions are found to have been knowing or willful.

95.   Plaintiff and Prerecorded Call Class members are also entitled to and do seek injunctive relief prohibiting the Defendant from advertising their goods or services, except for emergency purposes, using an ATDS or pre-recorded voice in the future.

## THIRD CAUSE OF ACTION
**Violation of the Telephone Consumer Protection Act
(47 U.S.C. 227, et seq. and 47 C.F.R. §§ 64.1200(d))
on behalf of the National Do Not Call Registry Class**

96.   Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

97.   Crisp Marketing violated the TCPA and the Regulations by making, or having its agent make, two or more telemarketing text messages within a 12-month period on Crisp Marketing's behalf to Plaintiff and the members of the National Do Not Call Registry Class while those persons' phone numbers were registered on the National Do Not Call Registry.

98. As a result of the Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and National Do Not Call Registry Class members are entitled to an award of up to $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

99. Plaintiff and National Do Not Call Registry Class members are also entitled to and do seek injunctive relief prohibiting the Defendant from advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future.

100. The Defendant's violations were knowing or willful.

## FOURTH CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. 227(c) and 47 C.F.R. §§ 64.1200(d))
### on behalf of the Policy Class

101. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

102. Plaintiff and the proposed Policy Class incorporate the foregoing allegations as if fully set forth herein.

103. Defendant placed numerous calls for telemarketing purposes to Plaintiff's and Policy Class Members' telephone numbers.

104. Defendant did so despite not having a written policy pertaining to "do not call" requests.

105. Defendant did so despite not having such a policy available "upon demand."

106. Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list or policy.

107. Defendant did so despite not recording or honoring "do not call" requests.

17

108. Defendant placed two or more telephone calls to Plaintiff and Policy Class Members in a 12-month period.

109. Plaintiff and Policy Class Members are entitled to an award of $500 in statutory damages telephone call in addition to and separate from any award for damages related to Defendant's calls using an automatic telephone dialing system and in addition to and separate from any award for Defendant's calls to persons on the National Do-Not-Call Registry.

110. Plaintiff and Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 per telephone call if the Defendant's violations were knowing and/or willful.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Injunctive relief prohibiting Defendant from calling telephone numbers advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry or to any cellular telephone numbers using a prerecorded voice in the future;

B. As a result of the Defendant's violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Robotext Class member up to treble damages, as provided by statute, of $1,500 for each and every violation of the TCPA;

C. As a result of the Defendant's violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Pre-Recorded Call Class member up to treble damages, as provided by statute, of $1,500 for each and every violation of the TCPA;

D.	As a result of the Defendant's willful and/or knowing violations of 47 C.F.R. § 64.1200(d), Plaintiff seeks for herself and each member of the National Do Not Call Registry Class up to treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

E.	As a result of the Defendant's willful and/or knowing violations of 47 C.F.R. § 64.1200(d), Plaintiff seeks for herself and each member of the Policy Class treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

F.	An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

G.	Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: January 28, 20 PLAINTIFF, on behalf of herself
and others similarly situated,

*/s/ Anthony Paronich*
Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

Alex M. Washkowitz
Jeremy Cohen
CW Law Group, P.C.
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com

*Attorneys for Plaintiff*